**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>v.<br><br>AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY,<br><br>                    Defendant. | Civ. Action No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES** |

Plaintiff, Zurich American Insurance Company ("Zurich"), by way of Complaint for Declaratory Judgment and for Damages against Defendant, American Empire Surplus Lines Insurance Company ("AESLIC"), alleges as follows:

## NATURE OF THE ACTION

1. This declaratory judgment action arises from an underlying personal injury action captioned *Jose Sabiaga Espinosa v. Cape Church Associates, LLC, et al.*, Supreme Court of the State of New York, New York County, Index No. 160747/2019 (the "Underlying Action").

2. In the Underlying Action, Jose Sabiaga Espinosa ("Claimant") alleges that, on or about October 3, 2019, he was in the course of his employment for AM Architectural Metal & Glass, Inc. ("AM Architectural") performing work at a construction project located at 149 Church St., New York, New York (the "Project"). Claimant alleges that he was employed as a welder and was hoisting a steel beam with his co-worker when it fell on him, causing injuries (the "Accident").

3. Zurich issued policy number GLO 0230492-03 (the "Zurich Policy") to Consigli & Associates LLC ("Consigli") for the period December 30, 2018 to December 30, 2019 and is currently providing a defense to Consigli and Cape Church Associates LLC ("Cape Church") in the Underlying Action.

4.      AESLIC issued commercial general liability policy number PL2664412 to AM Architectural for the period April 14, 2019 to April 1, 2020, with policy limits of $1,000,000 each occurrence, a $2,000,000 general aggregate per project limit and a $5,000,000 policy general aggregate limit (the "AESLIC CGL Policy").

5.      AESLIC also issued to AM Architectural commercial excess liability policy number XS2664413 for the period April 14, 2019 to April 1, 2020, subject to limits of $1,000,000 per occurrence and $2,000,000 general aggregate (the "AESLIC Excess Policy").

6.      Zurich has repeatedly tendered to AESLIC the defense and indemnity of Consigli and Cape Church in the Underlying Action on the grounds that Consigli and Cape Church qualify as additional insureds under the AESLIC CGL Policy and the AESLIC Excess Policy (together, the "AESLIC Policies").

7.      AESLIC has failed to acknowledge that Consigli qualifies as an additional insured under the AESLIC Policies and AESLIC's obligations to defend and indemnify Consigli under the AESLIC Policies.

8.      AESLIC has acknowledged that Cape Church is entitled to additional insured defense coverage under the AESLIC Policies but has not acknowledged its obligation to indemnify Cape Church under the AESLIC Policies. AESLIC has further failed to advise Cape Church of its right to independent counsel.

9.      In this action, Zurich seeks a declaration that: (1) AESLIC has a duty to defend Cape Church and Consigli with respect to the Underlying Action on a primary, non-contributory basis under the AESLIC CGL Policy; (2) Consigli and Cape Church are insureds or additional insureds for the Underlying Action under the AESLIC Excess Policy; (3) AESLIC has a duty to indemnify Consigli and Cape Church with respect to the Underlying Action on a primary, non-

contributory basis under the AESLIC Policies; and (4) AESLIC is obligated to reimburse Zurich for all defense costs incurred by Zurich in the defense of Consigli and Cape Church in the Underlying Action, plus interest.

## PARTIES

10. Zurich is a New York corporation, engaged in the insurance business, with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007, and a principal place of business in Illinois.

11. Upon information and belief, AESLIC is an insurance company organized and existing under the laws of the State of Ohio, with its principal place of business in Ohio.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201-02 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iii) the matter is between citizens of different states.

13. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district.

## THE UNDERLYING ACTION

14. On November 5, 2019, Claimant filed the Complaint in the Underlying Action against Consigli and Cape Church. A copy of the Underlying Action Complaint is attached hereto as **Exhibit 1**.

15. In the Underlying Action Complaint, Claimant alleges that his employer, AM Architectural, was hired by Cape Church and Consigli to perform erection, demolition, repairing, altering, cleaning or painting of buildings or structures at the Project.

16. Claimant further alleges in the Underlying Action Complaint that, in the course of his employment for AM Architectural, he was caused to suffer injuries on or about October 3, 2019, due to the negligence of Cape Church and Consigli, their employees, agents, representatives, servants and/or independent contractors in failing to, among other things: (i) maintain the premises and worksite in a reasonably safe, proper and suitable condition; (ii) provide safety equipment; (iii) properly and/or timely remove, minimize and/or warn of a dangerous condition on the Project. Claimant also alleges that Cape Church and Consigli violated New York Labor Law §§ 240(1) and 241(6).

17. On November 4, 2020, Cape Church and Consigli filed a Third-Party Complaint against AM Architectural in the Underlying Action. A copy of the Third-Party Complaint is attached hereto as **Exhibit 2**.

18. Cape Church and Consigli allege in the Third-Party Complaint that there was an agreement between TG Nickel & Associates LLC ("TG Nickel") and AM Architectural applicable to the Project and that, on or about June 6, 2019, TG Nickel filed a Name Change Amendment with the New York State Department of Corporations changing its name to Consigli & Associates LLC (the "Name Change Amendment").

19. Cape Church and Consigli further allege in the Third-Party Complaint that, if Claimant were to suffer the injuries alleged, such injuries were caused solely by the active, affirmative and primary negligence, violation of statutory duty, violation of code, rules, and regulations, breaches of warranty, and/or breaches of subcontract by AM Architectural.

20. Cape Church and Consigli also assert causes of action in the Third-Party Complaint against AM Architectural for contribution, common law and contractual indemnification and breach of contract for failure to procure insurance.

# THE SUBCONTRACT

21. On or about June 6, 2016, TG Nickel and AM Architectural entered into a subcontract pursuant to which AM Architectural was to perform work on the Project (the "Subcontract"). A copy of the Subcontract is attached hereto as **Exhibit 3**.

22. The Subcontract identifies TG Nickel as the "Contractor", AM Architectural as the "Subcontractor" and Cape Church as the "Owner" and contains the following pertinent provisions:

> **ARTICLE 4 SUBCONTRACTOR**
>
> **4.1 EXECUTION AND PROGRESS OF THE WORK**
>
> 4.1.1.1 The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.
>
> \*   \*   \*
>
> **4.3 SAFETY PRECAUTIONS AND PROCEDURES**
>
> 4.3.1 The Subcontractor shall take reasonable safety precautions with respect to the performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within 24 Hours an injury to an employee or agent of the Subcontractor which occurred at the site.
>
> \*   \*   \*
>
> **4.6 INDEMNIFICATION**
>
> To the fullest extent permitted by law, in addition to, and not in derogation of, the Subcontractor's responsibility to indemnify as set forth in other Contract Documents, the Subcontractor shall indemnify, defend with counsel reasonably acceptable to the Contractor and Owner, and hold harmless, the Contractor, Owner, Cape Church Associates, . . . and the officers, directors, principals, partners, member, owners and agents and employees of any of them (collectively, the "Indemnitees") from and against all claims, liabilities, damages, losses and expenses,

including but not limited to all costs, fees and expenses of such defense, (including without limitation all attorneys' fees and expenses, court costs, expert witness fees and expenses, and any resulting settlement, judgment or award), including but not limited to attorneys' fees, arising out of or resulting from any performance of and/or failure to perform the Work, acts or omissions of the Subcontractor, its lower-tier sub-subcontractors, and others for whom the Subcontractor is responsible, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, . . . but only to the extent caused by the acts and/or omissions or a breach of contract of the Subcontractor, a Sub-Subcontractor to Subcontractor, and anyone any person or entity directly or indirectly employed by them or any person or entity for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder…. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in Section 3.18.

\* \* \*

### ARTICLE 8 THE WORK OF THIS SUBCONTRACT

8.1 The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.

1. **Provide all Material, Labor, Equipment, Engineering, and Shop Drawings for the <u>Windows</u> Scope of Work. In addition, please refer to the attached Special Provisions for <u>AM Architectural Metal & Glass</u> For a more exact scope of work.**

\* \* \*

### ARTICLE 13 INSURANCE AND BONDS

13.1: The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

**<u>See Attached Insurance Rider which is incorporated by reference herein.</u>**

\* \* \*

23. Exhibit A to the Subcontract contains the following pertinent scope of work and general provisions:

### I. GENERAL PROVISIONS

1. This Subcontract shall provide for the furnishing of all labor, materials, engineering, equipment, tools, supervision, hoisting, rigging, scaffolding, etc., as they become necessary for the performance of all **Windows** work for the **149 Church Street** Project in accordance with the following Contract Documents and the Additional Information stated herein.

### II. ADDITIONAL PROVISIONS

20. This Subcontractor is responsible for all general safety items in their areas of work. This includes, but is not limited to, the Overall Safety of all of this Subcontractor Employees, and providing safe access for any required Inspections of this Subcontractors work.

24. Exhibit C to the Subcontract, titled "Insurance Requirements" obligated AM Architectural to obtain general liability insurance with limits of $1M per occurrence/$2M aggregate and umbrella/excess liability insurance with limits of $5M per occurrence and $5M per aggregate.

25. TG Nickel and Cape Church are listed in Exhibit C to the Subcontract among the entities required to be named as additional insureds on AM Architectural's insurance on a primary and non-contributory basis.

### THE AESLIC CGL POLICY

26. AESLIC issued commercial general liability policy number PL2664412 to AM Architectural for the period April 14, 2019 to April 1, 2020. A copy of the AESLIC CGL Policy is attached hereto as **Exhibit 4**.

27. The AESLIC CGL Policy is subject to limits of $1,000,000 per occurrence, $2,000,000 general aggregate per project and $5,000,000 policy general aggregate.

28. The AESLIC CGL Policy contains the following preamble and insuring agreement:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a named insured under this Policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

**SECTION I – COVERAGES**

**Coverage A – Bodily Injury and Property Damage Liability**

1. **Insuring Agreement**

   a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

                              *   *   *

29. The AESLIC CGL Policy also contains the following "Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization" endorsement which provides, in pertinent part:

**Schedule**

| Name of Additional Insured Person(s) or Organization(s) | Location(s) of Covered Operations |
|---|---|
| Any person or organization where required by written contract to be added as an additional insured, provided the "bodily injury", "property damage", or "personal and advertising injury" occurs subsequent to the execution of the contract or agreement. | All locations where performing your ongoing operations for the person or organization shown in the schedule. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

8

 **A. SECTION II – WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:

  **1.** your acts or omissions; or

  **2.** the acts or omissions of those acting on your behalf;

 in the performance of your ongoing operations for the Additional Insured(s) at the location(s) designated above.

 However:

  **1.** the insurance afforded to such additional insured only applies to the extent permitted by law; and

  **2.** if coverage provided to the Additional Insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

* * *

30. The AESLIC CGL Policy also contains the following "Amendment of Other Insurance Condition – Primary Wording for Additional Insureds" endorsement which states, in pertinent part:

> The following provision is added to **a. Primary Insurance** in **Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance:**
>
> The insurance afforded to any additional insured on this Policy is primary insurance, but only with respect to "bodily injury" or "property damage" liability arising out of your operations. Furthermore, the insurance maintained by the additional insured shall be non-contributing.
>
> However, this coverage extension applies only if:
>
> **1.** You are required by an "insured contract" to provide primary and non-contributory status; and
>
> **2.** The "bodily injury" or "property damage" must occur subsequent to the execution of an "insured contract".

* * *

9

## THE AESLIC EXCESS POLICY

31. AESLIC also issued commercial excess liability policy number XS266413 to AM Architectural for the period April 14, 2019 to April 1, 2020, subject to limits of $1,000,000 per occurrence and $2,000,000 general aggregate. A copy of the AESLIC Excess Policy is attached hereto as **Exhibit 5**.

32. The AESLIC CGL Policy is listed on the AESLIC Excess Policy's Schedule of Underlying Insurance.

33. The AESLIC Excess Policy contains the following preamble and insuring agreement:

### EXCESS LIABILITY POLICY

> This is an Excess Liability Policy issued to the persons or organizations named as an insured (herein referred to as you and your) in the Declarations by the company (herein referred to as we, us and our) specified in the Declarations. The first named insured is the insured first named in the Declarations.
>
> **1. INSURING AGREEMENT**
>
> **A.** Coverage
>
> We will pay those sums that the insured becomes legally obligated to pay as damages in excess of the total applicable limits of the Underlying Insurance set forth in the Declarations of this Policy, whether such limits are collectible or not. This insurance is subject to the applicable insuring agreements, exclusions, conditions and terms of the Underlying Insurance, whether such insurance is collectible or not.
>
> No other obligation or liability to pay sums or perform acts or services is covered by this Policy unless explicitly provided for under Section **B.** defense, settlement, supplementary payments.
>
> The amount we will pay for damages is limited to the limits of insurance specified in the description of excess insurance.
>
> \* \* \*

34. The AESLIC Excess Policy contains the following pertinent condition:

    **2. CONDITIONS**

        **I.** Underlying Insurance also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this Policy.

*   *   *

35. The AESLIC Excess Policy also contains the following "Amendment – Other Insurance Persons or Organizations For Whom You Have Agreed in a Written Contract to Provide Insurance" endorsement which states, in pertinent part:

> If a written contract which you have signed prior to an occurrence requires you to provide additional insured coverage to persons and/or organizations designated in that written contract on a primary or primary and non-contributory basis, this insurance will apply as if other insurance available to that person(s) or organization(s) as a named insured does not exist.
>
> The terms of this endorsement will only apply to the extent that additional insured coverage for such person or organization is also provided by a policy listed in the Schedule of Underlying Insurance, to which this Policy will remain excess, and for no broader coverage than is provided by such underlying insurance.
>
> This endorsement does not apply with respect to any other insurance available to such person or organization where such person or organization has been named as or is entitled to coverage as an additional insured. In such circumstances, this insurance will be excess to any such additional insured coverage.

*   *   *

<u>**CLAIM CORRESPONDENCE**</u>

36. By letter dated July 27, 2020, counsel representing Cape Church and Consigli in the Underlying Action tendered the defense and indemnity of Cape Church and Consigli to AM Architectural and AESLIC. A copy of the July 27, 2020 tender is attached hereto as **Exhibit 6**.

37. On or about September 11, 2020, Great American Risk Solutions ("Great American"), on behalf of AESLIC, disclaimed coverage to Cape Church and Consigli under the

11

AESLIC CGL Policy for the Underlying Action. A copy of the September 11, 2020 disclaimer is attached hereto as **Exhibit 7**.

38. On or about November 17, 2020, Great American sent a supplemental coverage position letter to Cape Church and Consigli's counsel, agreeing to provide additional insured defense coverage to Cape Church and Consigli for the Underlying Action under the AESLIC CGL Policy, subject to a reservation of rights for indemnification. The November 17, 2020 letter is attached hereto as **Exhibit 8**.

39. In its November 17, 2020 letter, Great American acknowledged receiving the Name Change Amendment which Great American stated "details that T.G. Nickel & Associates, LLC became Consigli & Associates, LLC on or about June 6, 2019."

40. Then, by letter dated August 2, 2021, Great American reversed course and disclaimed coverage to Cape Church and Consigli for the Underlying Action based upon a "blanket wrap up exclusion" contained in the AESLIC CGL Policy. A copy of the August 2, 2021 letter is attached hereto as **Exhibit 9**.

41. Zurich responded to Great American by letter dated April 20, 2022, explaining that the "blanket wrap up exclusion" was inapplicable to bar coverage. A copy of the April 20, 2022 letter is attached hereto as **Exhibit 10**.

42. By two separate letters to Cape Church and Consigli dated May 11, 2022, counsel for AESLIC acknowledged the inapplicability of the "blanket wrap up exclusion", agreed to provide a defense to Cape Church in the Underlying Action as an additional insured under the AESLIC CGL Policy – subject to a reservation of rights on indemnification – and disclaimed coverage to Consigli. Copies of the May 11, 2022 letters are attached hereto as **Exhibit 11**.

43. In each of its May 11, 2022 letters, AESLIC's counsel acknowledged that, "[o]n June 6, 2019, T.G. Nickel officially filed the necessary documentation to become known as Consigli."

44. Then, by letter dated June 13, 2023, counsel for Cape Church and Consigli in the Underlying action re-tendered their defense and indemnity under the AESLIC Policy to AESLIC and their counsel. A copy of the June 13, 2023 re-tender is attached hereto as **Exhibit 12**.

45. By two separate letters dated July 11, 2023, AESLIC's counsel once again disclaimed coverage to Consigli under the AESLIC Policies and agreed to provide a defense to Cape Church in the Underlying Action subject to a reservation of rights on indemnity. A copy of the July 11, 2023 letters are attached hereto as **Exhibit 13**.

46. By letters dated December 8, 2023 (**Exhibit 14**) and March 25, 2024 (**Exhibit 15**) Coughlin Midlige & Garland LLP, on behalf of Zurich, re-tendered the defense and indemnity of Cape Church and Consigli to AESLIC's counsel.

47. As of the date of filing this Complaint, AESLIC has not agreed to provide coverage to Consigli in the Underlying Action and has failed to apprise Cape Church of its right to independent counsel for the Underlying Action.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST AESLIC
### (Declaratory Judgment – Duty to Defend)

48. Zurich repeats and realleges each and every allegation in Paragraphs 1 through 47 as if fully set forth herein.

49. Under the terms of the AESLIC CGL Policy, AESLIC has a duty to defend Consigli and Cape Church as additional insureds in the Underlying Action on a primary and non-contributory basis.

50. To date, AESLIC has failed to acknowledge its duty to defend Consigli on a primary and non-contributory basis in the Underlying Action.

51. AESLIC has acknowledged that Cape Church qualifies as an additional insured under the AESLIC CGL Policy for purposes of defense coverage but has failed to apprise Cape Church of its right to independent counsel in light of AESLIC's reservation of rights as to indemnity.

52. An actual and justiciable controversy exists between Zurich and AESLIC concerning Cape Church and Consigli's entitlement to a defense in the Underlying Action under the AESLIC CGL Policy.

53. A resolution of this dispute is necessary to resolve AESLIC's duty to defend Cape Church and Consigli in the Underlying Action and to reimburse Zurich for fees and expenses, which it has incurred in the defense of Cape Church and Consigli.

54. Therefore, Zurich seeks a judicial determination and declaration that AESLIC is obligated to defend Cape Church and Consigli in the Underlying Action on a primary, non-contributory basis.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST AESLIC
**(Declaratory Judgment – Insured Status)**

55. Zurich repeats and realleges each and every allegation in Paragraphs 1 through 54 as if fully set forth herein.

56. Under the terms of the AESCLI Excess Policy, Cape Church and Consigli qualify as insureds or additional insureds for the Underlying Action.

57. To date, AESLIC has failed to acknowledge that Cape Church and Consigli are insureds or additional insureds for the Underlying Action.

58. An actual and justiciable controversy exists between Zurich and AESLIC concerning Cape Church and Consigli's status as insureds or additional insureds for the Underlying Action.

59. A resolution of this dispute is necessary to resolve whether Cape Church and Consigli are insureds or additional insureds for the Underlying Action under the AESLIC Excess Policy.

60. Therefore, Zurich seeks a judicial determination and declaration that Cape Church and Consigli are insureds or additional insureds for the Underlying Action under the AESLIC Excess Policy.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST AESLIC
**(Declaratory Judgment – Duty to Indemnify)**

61. Zurich repeats and realleges each and every allegation in Paragraphs 1 through 60 as if fully set forth herein.

62. Under the terms of the AESLIC Policies, AESLIC has an obligation to indemnify Cape Church and Consigli as additional insureds in the Underlying Action.

63. To date, AESLIC has failed to acknowledge their obligation to indemnify Cape Church and Consigli.

64. An actual case and justiciable controversy exists between Zurich and AESLIC concerning AESLIC's obligation to indemnify Cape Church and Consigli in the Underlying Action on a primary, non-contributory basis.

65. A resolution of this dispute is necessary to resolve AESLIC's duty to indemnify Cape Church and Consigli on a primary, non-contributory basis.

66. Therefore, Zurich seeks a judicial determination and declaration that AESLIC is obligated to indemnify Cape Church and Consigli in the Underlying Action on a primary, non-contributory basis.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST AESLIC
**(Priority of Coverage)**

67. Zurich repeats and realleges each and every allegation in Paragraphs 1 through 66 as if fully set forth herein.

68. Under the terms of the AESLIC Excess Policy, any coverage owed by the AESLIC Excess Policy to Cape Church and Consigli is primary to and non-contributory with the Zurich Policy.

69. To date, AESLIC has failed to acknowledge their obligation to provide primary coverage to Cape Church and Consigli.

70. An actual case and justiciable controversy exists between Zurich and AESLIC concerning their obligation to provide primary coverage to Cape Church and Consigli in the Underlying Action.

71. A resolution of this dispute is necessary to resolve AESLIC's duty to provide primary coverage to Cape Church and Consigli in the Underlying Action.

72. Therefore, Zurich seeks a judicial determination and declaration that AESLIC is obligated to provide primary coverage to Cape Church and Consigli in the Underlying Action.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST AESLIC
**(Breach of Contract)**

73. Zurich repeats and realleges each and every allegation in Paragraphs 1 through 72 as if fully set forth herein.

74. AESLIC has wrongfully failed to provide Cape Church and Consigli with a defense for the Underlying Action.

75. AESLIC's failure to provide a defense to Cape Church and Consigli in the Underlying Action on a primary and non-contributory basis violates the terms of the AESLIC CGL Policy.

76. As a direct and proximate result of AESLIC's failure to provide a defense to Cape Church and Consigli in the Underlying Action in violation of the obligations set forth in the AESLIC CGL Policy, Zurich has incurred considerable defense costs on behalf of Cape Church and Consigli in the Underlying Actions.

77. An actual and justiciable controversy exists between Zurich and AESLIC regarding AESLIC's obligation to reimburse Zurich for the defense costs incurred on behalf of Cape Church and Consigli in the Underlying Action.

78. Accordingly, the Court should award to Zurich, and order AESLIC to pay, all amounts that Zurich has incurred or will incur in the defense of Cape Church and Consigli in the Underlying Action, from the date of the initial tender request to the present, plus statutory interest.

**WHEREFORE**, Plaintiff, Zurich American Insurance Company, respectfully requests that the Court enter a judgment:

1. On the first cause of action, for a judgment declaring that AESLIC has a duty to defend Cape Church and Consigli in the Underlying Action as additional insureds on a primary and non-contributory basis.

2. On the second cause of action, for a judgment declaring that Cape Church and Consigli are insureds or additional insureds under the AESLIC Excess Policy for the Underlying Action.

3. On the third cause of action, for a judgment declaring that AESLIC has a duty to indemnify Cape Church and Consigli in the Underlying Action as additional insureds on a primary and non-contributory basis.

4. On the fourth cause of action, for a judgment declaring that AESLIC is obligated to provide primary and non-contributory indemnity coverage to Cape Church and Consigli in the Underlying Action.

5. On the fifth cause of action, for an order awarding Zurich money damages against AESLIC for all defense costs incurred by Zurich in the defense of Cape Church and Consigli in the Underlying Action, plus interest, as well as all attorneys' fees, costs, and expenses that it has occurred in prosecuting this action; and

6. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 10, 2024

                                **COUGHLIN MIDLIGE & GARLAND LLP**

                                By: */s/ Adam M. Smith*
                                    Adam M. Smith, Esq.
                                    Noah M. Wiesner, Esq.
                                    Wall Street Plaza
                                    88 Pine Street, 28th Floor
                                    New York, New York 10005
                                    (212) 483-0105
                                    asmith@cmg.law
                                    nwiesner@cmg.law
                                    *Attorneys for Plaintiff,*
                                    *Zurich American Insurance Company*